PEOPLE v. LA PANNE.

1. Homicide—Evidence—Dying Declarations.

In prosecution for manslaughter caused by abortion, admissibility of statement by victim as dying declaration was properly submitted to jury.

2. Criminal Law—Indorsement of Names of Witnesses.

Filing information without indorsement of names of witnesses as required by 3 Comp. Laws 1929, § 17254, although irregular, was not prejudicial error, where names were indorsed before trial and counsel for defendant notified.

3. Homicide—Rebuttal Testimony—Abuse of Discretion.

In prosecution for manslaughter caused by abortion, where defense was that death was caused by peritonitis occasioned by diseased appendix, trial court did not abuse its discretion in admitting rebuttal testimony.

4. Criminal Law—Evidence—Statements of Defendant.

Admitting in evidence statements signed by defendant made while in custody of officers and before she had obtained counsel was not error, where no claim is made that she requested opportunity to have advice of counsel.

Error to Ingham; Carr (Leland W.), J. Submitted April 16, 1931. (Docket No. 148, Calendar No. 35,216.) Decided June 1, 1931.

Elizabeth LaPanne was convicted of manslaughter. Affirmed.

*Harry H. Partlow* and *Harry D. Hubbard,* for appellant.

*Paul W. Voorhies,* Attorney General, and *John W. Bird,* Prosecuting Attorney, for the people.

WIEST, J. Defendant was convicted of the crime of manslaughter in causing the death of Edna Purdy by an abortion.

When the victim was in the hospital, within two hours of her death, she was informed that she was dying, and she made a statement implicating defendant, and it was used at the trial. It is claimed that the admissibility thereof as a dying declaration was destroyed by the following testimony:

"*Q.* What else was said to her?

"*A.* She was asked further if she did recover if she would go through with a prosecution against the defendant in this case.

"*Q.* What did she say about it?

"*A.* She said she would.

"*Q.* I will ask you whether or not anything was said to her to the effect that the statement which she was signing would be used when she had passed away, in case of her death?

"*A.* It was.

"*Q.* Did she make any answer to that?

"*A.* She said she was perfectly willing that it should be. We informed her that that was the purpose of taking that statement, but we wanted it before she died.

"*Q.* She said she was willing that the statement be used after she had passed away?

"*A.* She did say so.

"*Q.* And that conversation in regard to her statement, did that occur after she was told that she was at the point of death?

"*A.* Yes."

The willingness to prosecute, if she lived, did not negative the fact that she made the declaration with full knowledge of imminent death. It is true that the essential solemnity was not present unless she realized that her death was imminent. We think the jury justified in finding the declaration one *in articulo mortis.*

The court very properly left the question to the jury under the following instruction:

"Now, with reference to this statement so claimed to have been signed by Edna Purdy, this so-called dying declaration, in other words, I say to you that if you find it was made by Edna Purdy knowingly, that is, realizing the fact that she was—realizing the fact set forth in the paper that she signed, if it was signed by her, with the belief that death was imminent, then you will consider it in connection with the other evidence in the case, giving it the force and effect that you think it is fairly and reasonably entitled to. But unless you find that it was made understandingly and with the belief of imminent death or the consciousness of imminent death, then you will disregard it, because the law allows a so-called dying declaration to be considered in a case of this kind only when made in the belief that death is imminent. It is that consciousness of approaching death that is said to supply the sanctity of an oath that is administered to a witness in open court."

See *People* v. *Fritch,* 210 Mich. 343.

The motion to quash the information because of

alleged inadmissibility of the dying declaration before the examining magistrate was without merit.

The statute, Act No. 175, chap. 7, § 40, Pub. Acts 1927 (3 Comp. Laws 1929, § 17254), requires an information to have indorsed thereon the names of the witnesses known to the prosecutor at the time of filing the same. The purpose of this is to impart to the accused knowledge of the names of the witnesses. The information was filed without indorsement of the names of the witnesses but some time before the trial the prosecutor indorsed on the information the names of witnesses and notified the attorneys for the defendant. After the jury was impaneled the prosecutor asked that the names, so indorsed on the information, be sanctioned by the court. This was done. The record discloses no objection. The proceeding was irregular. We do not find, however, that defendant suffered such prejudice as to call for reversal, for her counsel had all the information that compliance with the law would have furnished.

At the trial it developed, by cross-examination of witnesses for the prosecution as well as by a witness called in behalf of defendant, that the defense was predicated on the claim that Edna Purdy's death was caused by peritonitis, occasioned by a diseased appendix. To rebut this theory the court allowed the prosecutor to indorse the names of witnesses to show that a microscopical examination of the appendix disclosed no interior disease or infection. The prosecution had previously introduced testimony to the effect that Edna Purdy's death was caused by peritonitis starting in the uterus and occasioned by an abortion. We do not think the court abused discretion in admitting the rebuttal testimony.

Defendant gave no testimony. There was no error in admitting in evidence statements signed by her, made while in custody of the officers and before she had obtained counsel. No claim is made that she requested opportunity to have the advice of counsel. The testimony relative to the statements negatived improper inducement.

We find no reversible error. Affirmed.

Butzel, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.